UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

LAKEVIEW TECHNOLOGY, INC., )
)
                Plaintiff, )
)
vs. ) 05 C 3227
)
ERIC ROBINSON, )
)
                Defendant. )

## MEMORANDUM OPINION

CHARLES P. KOCORAS, Chief District Judge:

This matter comes before the court on two motions. One, filed by Defendant Eric Robinson, seeks attorneys' fees pursuant to 28 U.S.C. § 1927. The other, filed by Plaintiff Lakeview Technology, Inc. ("Lakeview"), seeks a preliminary injunction to prevent Robinson from working for his new employer, Vision Solutions, Inc. ("Vision"), for the remainder of a term specified in Robinson's employment agreement with Lakeview. For the reasons set forth below, both motions are denied.

## BACKGROUND

Robinson is a former employee of Lakeview, a company that produces information availability software, which allows a user continuous access to data during expected or unexpected system shutdowns. There are very few companies that produce

this type of software, so competition for customers, partners (companies providing hardware or other software to work in conjunction with the information availability software), and skilled employees is fierce and constant.

Robinson began working for Lakeview in February 2001 as a vice president of sales and marketing. Because of the nature of the industry, he executed an employment agreement that included a non-competition agreement. Over the course of his four years with Lakeview, Robinson oversaw sales efforts to various degrees in western North America, Canada, and Latin America and was privy to strategic planning and other confidential information of Lakeview regarding its products, customers, and future direction. Lakeview's sales year begins in March and runs until March of the following year; much of the announcement of plans for the year and meetings about implementation are therefore done in the spring.

In late 2004, Robinson began discussions with Vision, one of Lakeview's primary competitors. Robinson told no one at Lakeview that these discussions were taking place. By April 2005, the talks had crystallized into a job offer, which Robinson accepted. He did not actually leave his position at Lakeview until the middle of May, nor did he inform anyone at Lakeview that he was leaving to take a job with Vision. He was asked on several occasions if rumors that he was going to Vision were true; he denied them and stated that he was leaving Lakeview to pursue real estate interests in

Nevada. During this same time, he attended meetings and accessed reports regarding Lakeview's plans for the 2005-2006 sales year and discussed the same with other Lakeview employees.

Shortly after Robinson began working for Vision, Lakeview learned of his new pursuit, and immediately filed the instant suit. The complaint alleges that Robinson's behavior constituted a breach of the non-competition agreement and that he had misappropriated Lakeview's trade secrets in the form of the sensitive sales information. We issued a temporary restraining order on June 1, which prevented Robinson from doing any work for Vision, and it was extended once. After it expired, the parties attempted to resolve the case while Robinson remained in a holding pattern but ultimately were unable to do so. As a result, Lakeview now seeks to obtain a preliminary injunction to prevent Robinson from working for Vision until the suit can be resolved.

At the onset of the suit, Lakeview was represented by the attorneys of Bell, Boyd, and Lloyd ("Bell, Boyd"), a Chicago law firm. Because that firm had represented Vision on another matter in 2000, Robinson contended that it could not represent Lakeview in this matter without creating an unacceptable conflict of interest. Over the ensuing three weeks, the parties engaged in a heated exchange over the propriety of the representation until, on June 24, Vision (though a non-party) filed a

motion for a protective order and to disqualify Bell, Boyd from continuing to represent Lakeview. A few days later, the firm withdrew its representation and present counsel was substituted into the case, mooting the motion. However, Robinson and Vision now request that they be reimbursed for the fees incurred during the few weeks that the controversy raged.

## DISCUSSION

### A. Motion for Attorneys' Fees

Under the so-called "American rule," a party to a lawsuit in this country pays its own attorneys' fees absent some sort of authority to shift the burden, such as a statute, a rule of procedure, or prior agreement of the parties. See, e.g., 28 U.S.C. § 1927; West Lafayette Corp. v. Taft Contracting Co., Inc., 178 F.3d 840, 842 (7th Cir. 1999); Fed. R. Civ. Proc. 37(a)(4)(A). The statute upon which Robinson and Vision rely, 28 U.S.C. § 1927, allows a court to require an attorney who "so multiplies the proceedings in any case unreasonably and vexatiously" to pay the attorneys' fees of his or her opponent. They contend that Bell, Boyd should have immediately withdrawn when Lakeview alerted it of the potential conflict. According to Robinson and Vision, the ensuing discussions, time, and eventual motion drafting that took place until Bell, Boyd's withdrawal constituted unreasonable and vexatious multiplication of proceedings and request $21,318 in fees incurred during that time.

Even without looking beyond the plain language of the statute, we can conclude that the fee request is not destined for victory. The three or so weeks that elapsed during the parties' wrangling over this issue does not strike us as an outrageous amount of time to deal with the conflict question raised. Neither does it appear from the materials Robinson and Vision have submitted that Bell, Boyd's disagreement that a conflict existed was done in bad faith, or with the intent to harass or unduly burden, or without a reasonable foundation for the difference of opinion. As a result, we cannot conclude that Bell, Boyd acted vexatiously or unreasonably, let alone both, as required by the statute. Accordingly, no sanction is warranted under § 1927, and the motion for fees is denied.

**B. Motion for Preliminary Injunction**

Lakeview premises its request for a preliminary injunction on both its claim for breach of the non-competition agreement and its claim for misappropriation of its trade secrets. A party seeking a preliminary injunction must show that it is likely to succeed on the merits of its claims, that it does not have an adequate remedy at law, and that the harm that will result if the injunction does not issue will be irreparable. Incredible Technologies, Inc. v. Virtual Technologies, Inc., 400 F.3d 1007, 1011 (7th Cir. 2005). If the party can show each of these three things, the court must then examine whether the harm to the party seeking the relief outweighs that to the potentially enjoined party

if the injunction were to issue. Id. If it does, preliminary injunctive relief is appropriate. Id.

*1. Breach of Non-competition Agreement*

A non-competition agreement is a contract, so a party claiming breach must show that the allegedly breaching party engaged in the activities he or she agreed, for the consideration paid during the employment period, not to perform after the employment ended. See Corroon & Black of Illinois, Inc. v. Magner, 494 N.E.2d 785, 791 (Ill. App. Ct. 1986). Robinson's employment agreement with Lakeview specified that he would not solicit, accept on behalf of another, or attempt to entice any customer with whom he had contact in the course of his duties as a Lakeview employee or any prospective customer of Lakeview as defined in the agreement. Aside from its fear that he will do so, Lakeview has offered nothing to indicate that Robinson has contacted any customers who would fall into either of these categories. Nor has it provided any evidence of customers being lured away to Vision through an effort by Robinson. By contrast, Vision has put in place filtering mechanisms to prevent Robinson from discussing or being involved with transactions in Alaska, Arizona, Arkansas, California, Colorado, Hawaii, Idaho, Illinois, Indiana, Iowa, Kansas, Minnesota, Missouri, Montana, Nebraska, Nevada, New Mexico, North Dakota, Oklahoma, Oregon, Washington, South Dakota, Texas, Utah, Wisconsin, Wyoming, Latin

-6-

America, or specified customers within Canada. Even if these restrictions are not perfectly coextensive with Lakeview's perception, there can be no doubt that they closely track the areas for which Robinson had been responsible while at Lakeview and therefore cover substantially the same ground (literally and figuratively) as the non-competition agreement.

In addition, even assuming that Robinson is inclined to engage in prohibited activities, his employment agreement provides him a powerful incentive to refrain. The agreement contains a provision that largely echoes the provisions of Robinson's agreement with Lakeview, in that it states that he will not solicit any Lakeview partners, customers, or prospective customers with whom he formed relationships through his employment at Lakeview. Given the presence of both of these agreements and the lack of any showing that Robinson has violated his obligations, we are unconvinced that Lakeview has shown that it would likely prevail on a claim for breach of the employment agreement.

With respect to the second factor, we are not convinced that Lakeview could not be adequately compensated with money damages for any harm shown if a breach was established. While it appears that the damage could be very large, given the nature of the industry involved and the length of the revenue-generating relationship with customers, that does not render a financial remedy inadequate. Surely Robinson is

aware of the level of exposure involved, providing an additional disincentive for him to push the envelope of acceptable behavior during the period that the agreement is operable. Each of these considerations also counsels against a determination that the harm to Lakeview would be irreparable if any of its fears should materialize.

Though the insufficient showing on the first three elements obviates our consideration of the balance of harms, that factor also is not in Lakeview's favor. The lion's share of the restrictions that Lakeview seeks have been voluntarily put in place by Vision and Robinson. The enhanced restriction that it proposes basically prevents Robinson from working at all. On balance, and particularly in light of the voluntary restrictions to which Robinson is now subject, the greater harm would come from enjoining him from working. Thus, even if the other factors were present, this factor would stand in the way of an injunction issuing on the breach of contract claim.

## 2. *Misappropriation of Trade Secrets*

To demonstrate that Robinson has misappropriated its trade secrets in violation of Illinois law, Lakeview must show that the information at issue was a secret, that Robinson misappropriated it, and that he has used it in his new employment with Vision. Associated Underwriters of Am. Agency v. McCarthy, 826 N.E.2d 1160, 1168 (Ill. App. 2005). There is no dispute that Lakeview's sales information is secret. Even assuming that Robinson misappropriated it, however, Lakeview has offered nothing

that would indicate that Robinson has divulged it to Vision or otherwise made use of it at his new job. The employment agreement between Robinson and Vision provides that Robinson shall not disclose or otherwise use any information that Lakeview considers to be confidential or a trade secret. If he were to do so, not only could he be fired from his job at Vision, Vision would not indemnify him for any legal damages resulting from the disclosure or use. These provisions make the chance that Robinson would act in a contrary manner, thus allowing Lakeview to succeed on the merits of a trade secret appropriation claim, extremely small. Lakeview insists that disclosure is inevitable based on the similarities it perceives between Robinson's old job and his new one, and his conduct in departing Lakeview makes them less than confident that he will act with the utmost integrity. There is no question that Robinson could have conducted himself in a more upstanding manner in leaving his position with Lakeview, and there is no doubt that Lakeview's fear that he would misuse the knowledge he gained from them was palpable and reasonable at the time that the complaint was filed. However, the passage of time has not borne out the hypothesis that Robinson's departure would significantly harm Lakeview, at least to the degree that would warrant the extraordinary remedy sought.

On the second consideration, Lakeview has the better of the argument. A secret, once told, cannot be untold; it is extremely unlikely that money damages would provide

Lakeview an adequate substitute for the opportunity to fully implement its sales strategies. With regard to the related third factor, though, Lakeview stands on somewhat shakier ground. Although the disclosure of trade secrets usually results in irreparable harm, here the reason for secrecy is time-dependent. Lakeview wants to keep its sales strategies under wraps long enough to be able to implement them without unfair interference from its competitors, but the information, in contrast to a soft drink recipe or the like, was never intended to be perpetually confidential. Eventually, Lakeview's actions will reveal its plans, and at that point there will no longer be a protectible interest in the information. As a result, the competitive advantage that Lakeview fears Robinson will be able to provide through his knowledge of its plans for the March 2005-March 2006 sales year and the corresponding potential for harm that cannot be remedied is steadily dwindling as time goes on. Accordingly, this factor does not weigh overwhelmingly in Lakeview's favor.

As was the case on the breach of contract issue, the showing on the first three factors here is enough to prevent us from issuing preliminary injunctive relief, but that conclusion is only buttressed by the consideration of the balance of harm. The harm to Robinson from an inability to work clearly outweighs the small potential that he will disclose the information he knows before Lakeview itself does. So again, even if the

other factors were present, this factor would stand in the way of an injunction issuing based on the misappropriation of trade secrets claim.

## CONCLUSION

Based on the foregoing analysis, Robinson's motion for attorneys' fees and Lakeview's motion for a preliminary injunction are both denied.

_____
Charles P. Kocoras
Chief Judge
United States District Court

Dated:  October 27, 2005